**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**JOSHUA R.**[1],

Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

Defendant.

Case No. 6:25-cv-1725-SI

**OPINION AND ORDER**

Rory Joseph Linerud, LINERUD LAW FIRM, 1144 Wallace Road NW, #212, P.O. Box 5734, Salem, OR 97304. Of Attorneys for Plaintiff.

Scott E. Bradford, United States Attorney, and Susanne Luse, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Ryan Lu, Special Assistant United States Attorney, PROGRAM LITIGATION 1, LAW & POLICY, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Joshua R. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Supplemental Security Income ("SSI"). For the reasons discussed below, the Court REVERSES the Commissioner's decision, and REMANDS for immediate payment of benefits.

**STANDARD OF REVIEW**

The decision of the administrative law judge ("ALJ") is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for SSI on December 15, 2020, alleging a disability onset date of January 1, 2018. AR 148-50. Plaintiff was born on June 15, 1974, meaning that Plaintiff was 43 years old at the time of the alleged disability onset date. AR 51. The Commissioner denied Plaintiff's application and request for reconsideration. AR 82-86, 103-08. Subsequently, Plaintiff, along with his attorney, attended a hearing before ALJ Paula M. Martin on February 15, 2023. AR 33-49. The ALJ denied Plaintiff's application for benefits on March 6, 2023. AR 18-28. Plaintiff appealed to federal court, and on August 20, 2024, then-United States Magistrate Judge Mustafa Kasubhai reversed the ALJ's decision and remanded the case for further proceedings. AR 389-400.

Upon remand, ALJ Martin scheduled a second video conference hearing, which was held on May 15, 2025. AR 364-84. Later that month, on May 27, 2025, the ALJ denied Plaintiff's application for benefits once more. AR 341-57. Plaintiff did not file a Written Exception to the ALJ's decision, nor did the Appeals Council review the decision. Therefore, the Commissioner's denial is now considered final for purposes of judicial review. *See* 20 C.F.R. § 404.955(a). Plaintiff appeals this final denial of benefits, requesting review by the Court. *See* 42 U.S.C. § 405(g).

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). *See* 20 C.F.R. § 404.1545.

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *See Tackett*, 180 F.3d at 1099; *Bustamante*, 262 F.3d at 954.

**C. The ALJ's Decision**

In her final decision on May 27, 2025, the ALJ concluded that Plaintiff has not been disabled, as defined under the Social Security Act ("Act"), since December 15, 2020, the date

that Plaintiff's application was filed. AR 345. The ALJ walked through the necessary five-step sequential process in making this determination. *See Keyser*, 648 F.3d at 724-25; AR 345-57.

At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 15, 2020. AR 346. The ALJ found this to be true, despite Plaintiff having worked after his application was filed, because Plaintiff's work activity did not rise to the level of substantial gainful activity as defined under 20 C.F.R. § 416.972. *Id.* At the second step, the ALJ concluded that Plaintiff has the following severe impairments: depression, anxiety, and degenerative disc disease of the spine. AR 347. The ALJ additionally concluded that Plaintiff has multiple non-severe impairments, including migraines, substance use/abuse disorder, abdominal pain in the right upper quadrant, a left wrist injury, and arthritis of the carpometacarpal joint of the left thumb. AR 347-38. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 348-50; *see also* 20 C.F.R. § 416.920(a)(4)(iii).

Having made these determinations, the ALJ proceeded to assess Plaintiff's RFC. AR 350-55. The ALJ concluded that Plaintiff has an RFC as follows:

> [Plaintiff] has the residual functional capacity to perform work at the light level of exertion, but with the following nonexertional limitations. He can perform frequent handling with non-dominant left upper extremity. He can understand, remember and carry out simple instructions, and perform routine and repetitive tasks. He can use judgment to make simple work-related decisions. He is able to tolerate frequent contact with supervisors, occasional contact with co-workers, and the general public.

AR 350. The ALJ stated that this RFC "is supported by medical imaging, musculoskeletal [and] physical examinations, mental status examinations, [Plaintiff's] work activity in 2024, and the record as a whole." AR 355.

At step four, the ALJ concluded that Plaintiff had no past relevant work, as outlined by 20 C.F.R. § 416.965. AR 355. At step five, because the ALJ's determined RFC for Plaintiff contained non-exertional limitations only, the ALJ used section 204.00 of the Medical-Vocational Guidelines in completing her analysis. *Id.* Under this framework, the ALJ "asked the vocational expert whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity." AR 356. The vocational expert testified that an individual similarly situated to Plaintiff "would be able to perform the requirements of representative occupations" such as a marker (approximately 163,000 jobs in the national economy), assembler small products I (approximately 20,000 jobs in the national economy), and router (approximately 22,000 jobs in the national economy). *Id.* Based on this testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* Thus, the ALJ found that Plaintiff has not been disabled, as defined in the Act, since December 15, 2020, the date of Plaintiff's application. AR 356-57.

## DISCUSSION

Plaintiff raises several issues on appeal. Plaintiff contends that: (A) the ALJ erred in determining at Step Two that Plaintiff's migraines are a non-severe impairment; (B) the ALJ improperly rejected Plaintiff's subjective testimony regarding the severity of his migraine symptoms; and (C) the RFC is not based on an assessment of all of Plaintiff's limitations and thus is not supported by substantial evidence, thereby resulting in an erroneous conclusion at Step Five. The Court addresses these issues in turn.

**A. Step Two Determination**

"The severity regulation [at Step Two] increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Under Step Two, "claimants need only make a de minimis showing for the analysis to proceed past this step." *Glanden v. Kijakazi*, 86 F.4th 838, 843-44 (9th Cir. 2023).; *see also Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) ("[S]tep two is merely 'a de minimis screening device to dispose of groundless claims.'" (quoting *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001)). Therefore, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in *Webb*) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

**1. Whether the ALJ Erred in Step Two Determination**

Plaintiff maintains that the ALJ erred in concluding that Plaintiff's migraines are a non-severe impairment at Step Two. Plaintiff argues that the ALJ mischaracterized the record evidence and ignored other significant and probative evidence as to the severity of Plaintiff's migraines.

The Ninth Circuit has used a "'significant probative evidence' standard in a variety of contexts in which Social Security claimants [have] contended that an ALJ erred in not addressing a given argument or piece of evidence." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (collecting cases). Under this standard, "an ALJ 'need not discuss *all* evidence presented to her. Rather, she must explain why significant probative evidence has been rejected.'" *Id.* (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)) (emphasis in

*Vincent*).[2] "This standard appropriately captures the competing interests at stake" when making a disability determination. *Id.* That is, "[t]o engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis," but "a rule requiring ALJs to address every argument or piece of evidence, however meritless or immaterial, would unduly detain ALJs in their orderly consideration of Social Security disability benefits claims." *Id.*; *see also Jason H. v. Kijakazi*, 2022 WL 2610074, at *10 (D. Or. July 8, 2022) ("An ALJ's rejection of a medical opinion is erroneous when the opinion is merely ignored."); *Elaina R. v. Kijakazi*, 2023 WL 6213295, at *9 (Sep. 25, 2023) ("The ALJ effectively rejected . . . testimony by ignoring it in her opinion.").

An ALJ also may err by mischaracterizing the record evidence, including testimony and medical records, in making a disability determination. *See Garrison v. Colvin*, 759 F.3d 995, 1015-16 (9th Cir. 2014) (finding that the ALJ committed error by mischaracterizing the claimant's testimony as evidence that claimant was not disabled, where testimony about daily activities "repeatedly emphasized" claimant needing to be "heavily assisted" and evidenced claimant being "regularly prohibited by her pain from engaging in activities"); *Holohan v. Massanari*, 246 F.3d 1195, 1206 n.8 (9th Cir. 2001) (noting that the "ALJ mischaracterized [a

[2] Although most discussions of what constitutes "significant probative evidence" have occurred in the context of claimants rebutting vocational expert testimony, the Ninth Circuit has provided some guidance for identifying "significant probative evidence" in the record as a whole. *See, e.g.*, *Walsh v. Colvin*, 2025 WL 40559, at *2 (9th Cir. Jan. 7, 2025) (finding that opinions were not significant probative evidence "insofar as they merely interpreted the same medical evidence in the record already before the ALJ" and focused on evidence of claimant's worsening condition that was "not probative of [claimant's] condition during the relevant period"); *see also Margaret M. v. Commissioner, Social Security Admin.*, 2026 WL 524100, at *8 (D. Or. Feb. 25, 2026) (finding that the ALJ ignored significant probative evidence where the "ALJ did not discuss contrary medical evidence"); *cf. Robert H. v. Kijakazi*, 2024 WL 35457, at *6 (D. Or. Jan. 3, 2024) (finding that evidence of claimant appearing "drowsy and sleepy" was not probative where disability application and presentation focused on claimant's "lower extremity impairments").

medical provider's] opinion by changing 'may' to 'could' perform simple if not detailed tasks" when assessing claimant's limitations). Mischaracterization is identifiable where an "ALJ [has] developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports," or where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998). This is especially problematic where such mischaracterization means that the ALJ's "approach and conclusion do not fully account for the nature of [the claimant's impairment] and its symptoms." *Id.* at 723.

Additionally, an ALJ may erroneously mischaracterize the record "by cherry-picking from mixed results." *Hoffschneider v, Kijakazi*, 2022 WL 3229989, at *1 (9th Cir. Aug. 10, 2022) (cleaned up); *see also id.* (finding that the ALJ improperly cherry-picked evidence by reporting a physician's opinion was that the claimant's "medications were 'working,'" where physician actually "wrote that the medications 'may be working OK;'" ALJ also "selectively cited the treatment records" of physicians "to suggest that [the claimant's] pain was being managed despite reports from these and other physicians that his pain remained sharp/stabbing, burning, and constant" (cleaned up)); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding that "the ALJ improperly cherry-picked some of [the physician's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the physician's] diagnoses and observations of impairment").

Here, the ALJ erred by failing to address and mischaracterizing probative evidence in the record. Although the ALJ accurately identified details related to Plaintiff's migraine symptoms from older evidence—pointing to, for example, Plaintiff reporting that his migraines last only 1-2 hours and go away after rest—the ALJ ultimately failed to consider the newer evidence. In the

2025 hearing, Plaintiff articulated that he has had up to 11 headaches a month, and that his "headaches usually last about anywhere from eight to ten hours," but that "it takes [him] a full 24 hours to recover from it" before he can get up and eat. AR 373. Plaintiff confirmed that his nausea and vomiting last "for about 45 minutes to an hour," that "[i]t's continuous" and "doesn't stop," and that he has "to drink water to be able to throw something up." *Id.*

Plaintiff's subjective symptom testimony outlines his worsening migraines over time, including increased frequency in his episodic migraines, as well as increased length in how long the migraine lasts and recovery takes. This significant change in Plaintiff's migraines, however, is not included nor addressed in the ALJ's findings. The ALJ also failed to consider Plaintiff's July 2024 medical visit. The record of that visit noted Plaintiff's ongoing prescription for Sumatriptan (the medication for his migraines) at 50 mg since 2023.

The ALJ also mischaracterized some of the evidence. The ALJ stated that Plaintiff reported at a May 2023 visit for his left wrist that he was not taking any as needed medication. The narrative portion of the record, however, states that Plaintiff has migraine headaches 3-4 times per month but "[d]oes not have [his] as needed med." AR 659. His prescriptions for Sumatriptan at 25mg and Reglan are listed as "not taking," but at that visit the doctor changed Plaintiff's medication to Sumatriptan 50mg and Zofran. AR 660-61. The medication change was filled the same day as the visit, AR 662, showcasing ongoing need and desire for the prescription. Thus, the record overall does not support that Plaintiff was rejecting medication.

The ALJ further stated that Plaintiff reported not taking medication for his migraines during both the 2023 and 2025 hearings, and that he denied sensitivity to light or sound. Plaintiff, however, reported in 2023 that he was not taking medication because he had "tried medication for [his migraines]" but that he "just end[s] up throwing it up." AR 41. Plaintiff further advised

that he must subsequently "crawl up in the fetal position" and "puke for . . . 45 minutes straight." *Id.* Plaintiff reported similar issues with medication being ineffective at the 2025 hearing. AR 373-74. This is a far cry from Plaintiff maintaining that, for example, his migraines were not severe enough to warrant remediation through medications. And, while Plaintiff denied sensitivity to light and sound, Plaintiff described significant nausea, which the ALJ did not address.

As such, although "an ALJ need not discuss *all* evidence presented to her," she "must explain why significant probative evidence has been rejected." *Kilpatrick*, 35 F.4th at 1193. The ALJ expressly failed to do so here. The ALJ erred in concluding at step two that Plaintiff's migraines were a non-severe impairment.

**2. Whether the ALJ's Error at Step Two is Harmless**

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination'" (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)). Omissions at step two are harmless error if step two is decided in the claimant's favor and the nonsevere conditions are considered by the ALJ. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). In *Buck*, the Ninth Circuit explained:

> Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Id.* (cleaned up). The Ninth Circuit then concluded that the plaintiff "could not possibly have been prejudiced" by an omission of a severe impairment at step two because the ALJ decided step two in the plaintiff's favor. *Id.* at 1049. The Ninth Circuit had also determined, however, that "all impairments were taken into account." *Id.*

The ALJ's error in concluding that Plaintiff's migraines were non-severe was not inconsequential to the ALJ's ultimate determination. The ALJ did not take into account Plaintiff's migraines after Step Two. The ALJ recited Plaintiff's 2025 testimony about his migraines, but did not address that testimony or otherwise appear substantively to consider Plaintiff's migraines. Indeed, the ALJ's error at Step Two permeated the remainder of the ALJ's determination, such that she improperly rejected Plaintiff's testimony in determining Plaintiff's RFC (discussed next), resulting in harmful error at Step Five.

**B. Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ improperly rejected Plaintiff's 2025 subjective symptom testimony by noting its existence but failing to analyze it. The ALJ offered an introductory boilerplate statement that Plaintiff's impairments could cause the alleged symptoms, but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*." AR 352 (emphasis added). The ALJ thereafter never provided any *reasons* for rejecting Plaintiff's testimony about his migraines.[3]

[3] The Commissioner repeatedly relies on this general statement as providing a sufficient reason to discount Plaintiff's testimony. But the Ninth Circuit's specificity requirement "means general findings are insufficient." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,1102 (9th Cir. 2014) (cleaned up).

**1. Legal Standard**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[4] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

[4] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler*, 775 F.3d at 1103 (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a claimant's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphases in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

**2. Analysis**

Plaintiff argues that the ALJ's complete lack of consideration of Plaintiff's migraine testimony runs afoul of the specificity requirement explained in *Brown-Hunter*. "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible." *Brown-Hunter*, 806 F.3d at 489. And reaching a conclusion about the plaintiff's testimony and summarizing the medical evidence, even if a district court can reasonably draw inferences regarding inconsistencies from that summary of medical evidence, does not suffice to meet the ALJ's burden. *Id.* at 494. This is because a court may only affirm based on reasons asserted by the ALJ, and the district court may not "comb the administrative record to find specific conflicts." *Id.* (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . [']is not the

same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

When evaluating Plaintiff's subjective symptom testimony, the ALJ recited selective portions, including Plaintiff's testimony about his migraines. This mention of Plaintiff's subjective symptom testimony, however, is analogous to a simple recitation of Plaintiff's medical record. *See Brown-Hunter*, 806 F.3d at 489. The ALJ listed Plaintiff's testimony as to his migraines in the middle of larger summaries of Plaintiff's subjective symptom testimony from the 2023 and 2025 hearings. AR 351. Following this recitation, the ALJ provided the boilerplate statement that the record was not fully consistent with Plaintiff's claimed limitations for the reasons discussed. AR 352.

The ALJ's subsequent reasoning, however, was absent of any assessment of Plaintiff's migraine-related testimony. The ALJ erred by failing to explain "*which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert*, 980 F.3d at 1277 (emphases in original) (quoting *Brown-Hunter*, 806 F.3d at 494). The ALJ may not fail to address Plaintiff's testimony, which is significant, probative evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (stating that "selectively [relying] on some entries" and ignoring others showing possibly disabling impairments is error); *D.W. v. Dudeck*,

2025 WL 957597, at *9 (N.D. Cal. Mar. 31, 2025) ("Based on the written decision, it is unclear why the ALJ ignored this testimony, but it is clear that the ALJ did not set forth the legally required analysis to demonstrate by clear and convincing evidence why the ALJ found this testimony not credible."); *Ignacio P. v. Kijikazi*, 2024 WL 211797, at *12 (S.D. Cal. Jan. 19, 2024) (concluding that "cherry-picking of certain inconsistencies ignores the record as a whole and is not a clear, convincing, and specific reason for discrediting Plaintiff's testimony.").

Even if the Court were willing to scour the medical record and attempt to figure out what portions the ALJ might have considered not to support Plaintiff's migraine testimony, that would be insufficient by itself to discount subjective symptom testimony. An ALJ may not "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); 20 C.F.R. § 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

**3. Post-Hoc Arguments from Defendant**

The Commissioner argues that the ALJ provided clear and convincing reasons for her rejection of Plaintiff's subjective symptom testimony. The Commissioner points to: (1) inconsistencies between Plaintiff's testimony and the record that were not identified by the ALJ; (2) that Plaintiff's subjective symptoms and impairments are inconsistent with his activities of living—a reason the ALJ expressly tied to Plaintiff's back pain and which do not make sense when considered with episodic migraine pain; and (3) Plaintiff's purported pattern as a "bad

historian" when disclosing his substance use.[5] The Court, however, must disregard *post hoc* explanations. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

**C. RFC Determination and Step Five Conclusion**

Under 20 C.F.R. § 404.1545, a claimant's RFC is "the most [that they] can still do despite [their]" "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [they] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). Notably, the ALJ is responsible for considering "all . . . medically determinable impairments of which [they] are aware, including [a claimant's] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). Therefore, as previously noted, "[t]he RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck*, 869 F.3d at 1049. In line with this understanding, the ALJ must assess a claimant's RFC "based on *all* of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3) (emphasis added).

[5] Even if the Court were to reach the Commissioner's stated reasons for rejecting Plaintiff's subjective symptom testimony, the reasons are unpersuasive. For example, Plaintiff's woodworking as a hobby is not patently at odds with episodic migraines. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Further, that one medical provider found Plaintiff to be non-forthcoming regarding his history of substance use does not mean that Plaintiff is unreliable in his testimony as a whole, and that his migraine-related testimony should be rejected. SSR 16-3p, 2017 WL 5180304, at *2 (stating that consideration of subjective symptom testimony "is not an examination of an individual's character"). The cases cited by the Commissioner were issued before SSR 16-3p.

Here, the ALJ failed to consider Plaintiff's migraine-related symptoms, whether characterized as a severe impairment or not, in determining Plaintiff's RFC. The ALJ did not consider Plaintiff's 2025 testimony or the July 2024 medical record. Thus, as argued by Plaintiff, the ALJ's step five finding is erroneous because the dispositive hypothetical question posed to the VE did not account for all of Plaintiff's limitations. *See Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (explaining that a hypothetical posed to the VE must be complete and "include all of the claimant's functional limitations, both physical and mental"); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the testimony has no evidentiary value." (cleaned up)). The ALJ therefore erred in relying on the VE testimony that there were significant jobs in the economy that Plaintiff could perform. Accordingly, the ALJ's conclusion that Plaintiff does not have a disability, as defined under the Act, is not supported by substantial evidence. The Court reverses the ALJ's determination.

**D. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler.*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Remand for benefits may be appropriate where the Commissioner "should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility." *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *see also Treichler*, 775 F.3d at 1111 (Tashima, J., concurring in part) (stating that remanding for further proceedings gives the Commissioner "that second bite at the apple and makes a shambles of the credit-as-true rule").

The ALJ erred at Step Two, in evaluating Plaintiff's testimony, in her RFC determination, and at Step Five. The record is fully developed as it pertains to Plaintiff's migraines. Plaintiff provided subjective symptom testimony regarding the worsening of his migraine symptoms, and provided medical documentation of Plaintiff's ongoing need for treatment related to his migraines. That the ALJ failed to adequately address this existing

evidence does not mean that the record as it stands is incomplete. The Court thus credits Plaintiff's improperly rejected testimony as true.

Properly credited as true, Plaintiff's 2025 subjective symptom testimony supports a finding that Plaintiff is disabled under the Act. When asked, the VE testified that if an "individual is either going to arrive late, leave early, or otherwise be absent 16 hours per month," "[t]hey would not maintain employment." AR 380. Credited as true, Plaintiff's most recent subjective symptom testimony indicates that Plaintiff's purported absences as a result of his episodic migraines goes well beyond 16 hours per month.

The Commissioner argues that the Court should remand Plaintiff's case for further proceedings, as the record shows "serious doubt" of whether the claimant was "in fact disabled," citing *Leon v. Berryhill*, 880 F.3d 1041, 1044-45 (9th Cir. 2017), *as amended* January 25, 2018. The Commissioner, however, selects only portions of the evidentiary record. Still, these selections are unpersuasive in showing that there is "serious doubt" Plaintiff is disabled due to his migraine symptoms. The Commissioner points to Plaintiff's statements regarding his mother's financial support contributing to his lack of need or motivation to work and his employment at a State Fair in 2024. Evidence of financial support from Plaintiff's mother does not provide insight into the severity of Plaintiff's migraine symptoms and how they affect his ability to work. Furthermore, that Plaintiff worked at a State Fair in 2024 does not raise doubts as to the severity of Plaintiff's migraines. Plaintiff worked at the State Fair for only three days in 2024. This brief window of time could easily have occurred outside of Plaintiff experiencing an episodic migraine. Thus, the Commissioner fails to identify inconsistencies in the record that raise "serious doubt" as to Plaintiff's migraine symptoms, credited as true.

Additionally supporting the decision to remand for benefits based is the fact that the Commissioner has now failed to meet the burden at Step Five twice. Allowing the Commissioner a third opportunity to try to meet her burden at Step Five would create the "unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" for which the Ninth Circuit has expressed disapproval. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Jason H. v. Kijakazi*, 2022 WL 2610074, at *11 (D. Or. July 8, 2022); *Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1165-66 (D. Or. 2015).

**E. Plaintiff's Request for Attorney Fees and Costs**

Plaintiff asks the Court to grant an award for costs and reasonable attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Plaintiff may separately file a formal application under 28 U.S.C. § 2412(d).

**CONCLUSION**

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 25th day of September, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge